## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**LOLA JONES,**

        **Plaintiff,**

**v.**                                    **Case No:   6:16-cv-138-Orl-37KRS**

**DISCOUNT AUTO PARTS, LLC,**

        **Defendant.**

_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration, after a discovery conference, on the following motion filed herein:

| |
|---|
| **MOTION:**  **DEFENDANT, DISCOUNT AUTO PARTS, LLC'S RENEWED MOTION TO EXCLUDE TREATING PHYSICIANS' OPINION TESTIMONY OF CAUSATION PURSUANT TO RULE 37(c)(1) (Doc. No. 43)** |
| **FILED:**       **November 10, 2016** |

## I.   BACKGROUND.

Plaintiff, Lola Jones, alleges that she was injured when she slipped and fell on a slippery area of the floor at a commercial retail business operated by Defendant, Discount Auto Parts, LLC ("Discount Auto").  Doc. No. 15.  In a medical chronology served with her initial disclosures, Jones identified medical providers who treated her for injuries to her neck, right elbow, right knee, right hip, right shoulder, right ankle, and low back, as well as for headaches.  Doc. No. 47-1.

The Court entered a Case Management and Scheduling Order ("CMSO") which required Jones to serve expert witness disclosures on or before August 26, 2016.  Doc. No. 20, at 3.  It is

undisputed that Jones did not serve any specific expert witness disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) or (a)(2)(C).

During a discovery conference, counsel for Plaintiff represented that David Petersen, M.D., of Whitesands Orthopedic; Scott S. Katzman, M.D., of Advanced Orthopedics and Pain Management, PL; and Jerold Fadem, M.D., of Central Florida Injury East, Inc. are treating physicians whom Plaintiff intends to call to present non-retained expert testimony regarding the cause of her injuries (collectively, the "Treating Experts").   Counsel for Plaintiff submits that the information required by Rule 26(a)(2)(C), specifically "the subject matter on which the witness is expected to present evidence . . . and a summary of the facts and opinions to which the witness is expected to testify," was contained in a medical chronology Plaintiff served with her initial disclosures.  Doc. No. 47-1, at 7, 11, 18, 19.  During the discovery conference, I compared the dates and entities expressing opinions listed in the medical chronology with the medical records produced in discovery.   It was a simple task to identify which physicians rendered each opinion.

The CMSO set the close of discovery on October 21, 2016.  Doc. No. 20, at 3.   During a preliminary pretrial conference on May 16, 2016, I cautioned counsel for the parties that discovery disputes should be resolved within the discovery period rather than being presented initially to the presiding District Judge after the discovery period closed.   Nevertheless, Discount Auto waited until after the close of discovery to file the above-referenced motion seeking discovery sanctions against Jones under Federal Rule of Civil Procedure 37(c)(1) arising from her failure to serve expert witness reports or disclosures.[1]  Doc. No. 43.

---

[1] Notably, Discount Auto does not seek to strike the opinions of the Treating Experts under *Daubert*.

## II.      ANALYSIS.

Federal Rule of Civil Procedure 37(c)(1) provides that when a party fails to disclosure information required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence unless the failure was substantially justified or is harmless.   Counsel for Jones argues, essentially, that the failure to serve a document specifically identified as a disclosure of opinions to be rendered by the Treating Experts was harmless because counsel for Discount Auto was provided all the information required by Rule 26(a)(2)(C) in the medical chronology served with Jones' initial disclosures.

Discount Auto contends that treating physicians who intend to render opinions on the proximate cause of a party's injuries must provide expert reports in the form required by Rule 26(a)(2)(B).   It argues, alternatively, that the medical chronology did not provide the information required by Rule 26(a)(2)(C).   Finally, it contends that it was prejudiced by Jones' failure to serve expert witness reports or disclosures by the due date established in the CMSO.

### A.      *Expert Witness Reports Under Rule 26(a)(2)(B) Were Not Required.*

Rule 26(a)(2)(B) requires expert reports to be disclosed by a witness who is "retained or specially employed to provide expert testimony in the case . . . ."   The Treating Experts were not retained or specially employed to provide expert testimony in this case.   The 2010 Advisory Committee Comments to Rule 26 make clear that "[a]n (a)(2)(B) report is required only from an expert described in (a)(2)(B)."   The comments further state that opinions of physicians or other health care professionals who will provide both fact and expert testimony must be disclosed under Rule 26(a)(2)(C) rather than Rule 26(a)(2)(B).

Some courts have concluded that simply labeling a witness a treating physician is insufficient to relieve the witness from providing an expert witness report under Rule 26(a)(2)(B).   *See, e.g.,*

*Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 1:11-cv-1094-JEC, 2013 WL 1189493 (N.D. Ga. March 21, 2013)(discussing cases).   After reviewing the case law, Judge Julie Carnes concluded as follows:

> [I]f a physician's opinion regarding causation or any other matter was formed and based on observations made during the course of treatment, then no Subsection B report is required, albeit the Subsection C report . . . will be required.   If, however, the physician's opinion was based on facts gathered outside the course of treatment, or if the physician's testimony will involve the use of hypotheticals, then a full subsection B report will be required.

*Id.* at *12 (internal citations omitted).   In *Guffey v. Dillard's, Inc.*, No. 3:14-cv-1469-J-32JBT, 2015 WL 12844949, at *3 (M.D. Fla. Dec. 29, 2015), Magistrate Judge Toomey, following the *Kondragunta* standard, concluded that "[o]pinions regarding causation, the need for continued treatment, and the reasonable cost thereof may be formed during the course of treatment, and do not automatically convert a treating doctor into 'one retained or specially employed to provide expert testimony' within the meaning of Rule (a)(2)(B)."

There is no indication in this case that any of the Treating Experts relied on information obtained other than that which was gathered during the course of treatment.   The Court can also prohibit use of hypothetical questions at trial.   Therefore, I recommend that the Court follow the rationales of the decisions in *Kondragunta* and *Guffey* and find that Jones was not required to provide expert witness reports under Rule 26(a)(2)(B) for any of the Treating Experts.

    B.    *The Initial Disclosures Provided the Information Required By Rule 26(a)(2)(C).*

Counsel for Jones does not dispute that disclosures of the opinions of the Treating Experts were required under Rule 26(a)(2)(C).   Rather, they argue that those disclosures were made in the medical chronology served with their initial disclosures.

Rule 26(a)(2)(C) requires a party to disclose the subject matter on which the expert is expected to present evidence and a summary of the facts and opinions to which the witness is

expected to testify.  The medical chronology provided the following summary of the facts and opinions of each of the Treating Experts.

<u>Whitesands Orthopedic (Dr. Petersen):</u>

New patient suffered injuries in slip and fall on 8/14/12.  Had coffee and another item in her hands when all of a sudden she slipped.  Didn't see any water or signs. Floor was very slick after, apparently, some tire shine material was spilled and it was buffed to try and remove it.  Floor was like glass.  She slipped and landed on her right elbow and right ankle.  She had significant neck pain later that day. Continues to have right forearm decreased sensation on the volar aspect, as well as pain in right ankle on the lateral aspect.  Right shoulder is bothering her as well.

MRI of cervical spine done on 9/18/12 which shows a straightening of cervical spine consistent with spasm.  Disc bulge at C4-5, which is larger than any other disc. MRI scan of right ankle done on 9/18/12, which shows an ankle effusion and avulsion fracture at tip of fibula.

Impression: Right fibula, nondisplaced fracture, right shoulder posterior labral tear, neck pain with a disc bulge at C4-5 and facet arthropathy at C4-5 level.

*(notes indicate these injuries are causally related to the motor vehicle accident of 8/14/12)*[2]

Doc. No. 47-1, at 7.

<u>Central Florida Injury East (Dr. Fadem):</u>

Final Evaluation - Victim of slip and fall in Advance Auto Parts.  Patient was referred here for multiple modality therapy in 20112 to neck, extremities and back. She underwent for a few months with suboptimal improvement.  Then referred to pain management and orthopedics where she has been seen over the past 2 years and gotten 2 rounds of lumbar ESI (injections).  They were ineffective and has been treated with hydrocodone intermittently (which she tries to avoid).  Recently told to have a 3rd round of Lumbar ESI but she is balking at having it due to past failures. Also seen neurology for her headaches where she was started on prn fiorecet.  It helps reduce her headaches but she still gets them 304 times a week.  Persistent pain in right neck, moderate to severe pain in low back radiating down her leg, moderate pain in right hip (diagnosed as bursitis, but steroid injection failed to help).  Has difficulty sleeping and unable to enjoy activities she enjoyed before accident.

---

[2] At the discovery conference, counsel for Plaintiff argued that the reference to a motor vehicle accident was a mistake.  This error may subject Dr. Petersen to impeachment on cross-examination, but I recommend that the Court find it does not render the disclosure of his opinion insufficient.

Crohn's Disease and partial ileectomy; Right arm fracture 15 years ago.

She has reached MMI after a course of therapy here and is being discharged from the program with a permanent impairment of 14% of total body in consideration of AMA Guidelines, 6th Edition.   Additional impairment input may be provided by other treating physicians.   She has been offered repeat therapy should her symptoms worsen in future.   Cost of such therapy may approach $800-$1600 quarterly.

She will need on-going pain management and headache treatment indefinitely. These may cost as much as $3500-$7000 annually.   She may need spine surgery for symptoms intractability at some point.

Doc. No. 47-1, at 18.

<u>Advanced Orthopedics and Pain Management, PL (Dr. Katzman):</u>

Patient fell at Advance Auto Parts when she slipped.   Floor was slippery because of a product dropped there.   She fell and sustained multiple injuries and was initially treated with Dr. Peterson from White Sand Orthopedics.   Recommended she undergo an arthroscopy of her subtalar joint, which she did.   MRI findings were performed on 3/20/14, which showed no evidence of any significant loose bodies or cartilage damage.   We cared for her i[n] regards to her neck, back and right hip bursitis.   Treated with Dr. Schapiro, who diagnosed her with a right lateral malleolus nondisplaced fracture and a right ankle sprain.   Had MRIs of cervical spine, which did not show any evidence of any fractures, dislocations or significant disc herniations.   MRI of lumbar spine, which Dr. Katzman reviewed on 3/20/14, which showed evidence of herniated disc at L4-L5 and L5-S1 level.   Having significant back pain initially, so we treated her with some epidural steroids.   Pain and problems have persisted.   She rates her pain at 6/10.   She has reached maximum medical improvement and surgical treatment is not undertaken.   Patient's future need and care for treatment would include her low back.   Still has a herniated disc and back pain and is likely going to require a lumbar discectomy.   Right ankle probably periodically requires PRP injections.   Neck therapy intermittently as well as massage therapy, chiropractic therapy and PT.   Right hip bursa, she had injection to same in past so likely she is going to require right hip bursal excision.   Estimates surgical needs easily will exceed $25,000 and that would include just the low back surgery.   If potential bursitis is persistent, that too is likely going to undergo a surgical undertaking.   Medical management of problems likely will cost several thousand dollars a year.   She will need medication therapy, supportive care and additional diagnostic studies.   She has reached maximum medical improvement at this point in time and has an overall 6% whole person impairment rating.

Doc. No. 47-1, at 19.

I recommend that the Court find that these statements were sufficient to comply with Rule 26(b)(2)(C). Whether these opinions are sufficient to establish causation is a decision to be resolved by the jury. *See, e.g., Marsh v. Valyou*, 977 So. 2d 543, 550 (Fla. 2008)(noting that a challenge to experts' causation opinions, rather than the methods used to reach those conclusions, is a proper issue for the trier of fact).

  C. *The Failure to Serve a Specific Rule 26(a)(2)(C) Disclosure Was Harmless*.

Discount Auto contends that it was prejudiced because Jones did not serve documents specifically identified as Rule 26(a)(2)(C) disclosures, while Jones contends that any error was harmless. In *Kondragunta*, the court applied the following five-factor test to determine whether an insufficient Rule 26(a)(2)(C) disclosure was harmless:

  (1) the surprise to the party against whom the evidence would be offered;

  (2) the ability of that party to cure the surprise;

  (3) the extent to which allowing the evidence would disrupt the trial;

  (4) the importance of the evidence; and

  (5) the nondisclosing party's explanation for its failure to disclose the evidence.

2013 WL 1189493, at *7 (citing *Cambridge Univ. Press v. Becker*, No. 1:08-cv-1425-ODE, 2010 WL 6067575, at *3 (N.D. Ga. Sept. 21, 2010)). The court's analysis of these factors is equally applicable in this case.

First, Discount Auto cannot justifiably claim surprise that the Treating Experts would be providing testimony as to causation, because it was so informed in the medical chronology. Second, Discount Auto "had the ability to complain . . . prior to the expiration of expert discovery, by advising plaintiff that [her] disclosures did not comply with the rule and by requesting more specific disclosures. Had plaintiff resisted, [it] could have sought the intervention of the Court.

Defendant[ ] did not do so, but instead laid in wait, hoping that plaintiff's non-compliance would doom [her] ability to offer any expert testimony." *Id.* at *8.

Third, allowing the testimony of the Treating Experts will not disrupt the trial.   Fourth, "if plaintiff's experts are excluded, his case will not make it past summary judgment. Thus, clearly the evidence is quite important." *Id.*

Fifth, counsel for Jones' explanation for the failure to serve specifically identified Rule 26(a)(2)(C) disclosures, even after the Court invited such disclosures to be served before the discovery conference (Doc. No. 51, at 1), does weigh against Jones.   "In a similar situation, the Eleventh Circuit has noted:

> We do not commend either party on its efforts to resolve this dispute. [The proponent of the expert] would do well to make sure that, in the future, its Rule 26 disclosures comport with both the spirt and the letter of the rule.   Nonetheless, [the opposing party] allowed this impasse to continue well beyond the point of good faith efforts to resolve the issue without court intervention, *never* moving for an order requiring any more detailed response under Rule 26.

*Kondragunta*, 2013 WL 1189493, at * 8 (quoting *Griffith v. Gen. Motors Corp.,* 303 F.3d 1276, 1283 (11th Cir. 2002) (original emphasis)).

Discount Auto took a gamble by not seeking a more specific disclosure of treating expert opinions and by not deposing the Treating Experts before the close of discovery.   When, as here, a party fails to promptly seek enforcement of its rights, any prejudice suffered arises largely from the party's own inaction. *Cf. Ellison v. Windt*, No. 6:99-CV-1268-ORL-KRS, 2001 WL 118617, at *3 (M.D. Fla. Jan. 24, 2001) (finding belated expert disclosure harmless where opposing party had ample time but waited until after close of discovery to file motion to strike, citing *GLS v. Dow Chemical Co.,* Civ. A. No. 87–3735, 1989 WL 144056 (E.D. Pa. Nov. 21, 1989)).   Therefore, after

considering the five-factor balancing test, I recommend that the Court find that the balance weighs in favor of Jones and decline to strike the opinions of her Treating Experts.

If Discount Auto wishes to change its strategic decision not to depose the Treating Experts, it should file a motion requesting leave to take depositions for the purposes of trial supported by a showing of good cause.   If Discount Auto asks to take these depositions belatedly, Jones may renew the oral request made during the discovery conference to take additional depositions for purposes of trial supported by a showing of good cause.

## IV.    RECOMMENDATION.

For the reasons discussed above, I **RESPECTFULLY RECOMMEND** that the Court **DENY** Defendant, Discount Auto Parts, LLC's Renewed Motion To Exclude Treating Physicians' Opinion Testimony Of Causation Pursuant To Rule 37(c)(1) (Doc. No. 43).

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on March 13, 2017.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy