UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LOLA JONES,

     Plaintiff,

v.                                   Case No. 6:16-cv-138-Orl-37KRS

DISCOUNT AUTO PARTS, LLC,

     Defendant.
_____

**ORDER**

     The instant action arises from an alleged slip-and-fall accident, which occurred at an Advance Auto Parts store operated by Defendant. (*See* Doc. 15; Doc. 44, p. 1.) Presently, Defendant has moved for summary judgment on two separate grounds—lack of breach and causation. (Docs. 25, 44.) In tandem with the latter motion, Defendant has also moved for the exclusion of causation testimony from Plaintiff's treating physicians (Doc. 43), which U.S. Magistrate Judge Karla R. Spaulding recommends that the Court deny (Doc. 58). Defendant objects to the Report and Recommendation. (Doc. 60.)

     Most recently, Defendant filed a motion *in limine* with respect to proffered hearsay evidence, the disputed physician causation testimony, and evidence of future medical expenses. For the reasons set forth below: (1) Defendant's motions for summary judgment are due to be denied; (2) Magistrate Judge Spaulding's Report and Recommendation is due to be adopted in part; (3) Defendant's motion to exclude causation evidence is due to be denied; and (4) Defendant's motion *in limine* is due to be

granted in part and denied in part.

On the evening of August 14, 2012, Plaintiff Lola Jones visited an Advance Auto Parts store located at 10473 Moss Park Road in Orlando, Florida. (*See* Doc. 1, ¶ 2; *see also* Doc. 44-1, pp. 4, 9, 13.) After purchasing some glue and a bottle of Dr. Pepper, Plaintiff walked toward the exit. (*See* Doc. 44-1, p. 3.) Halfway between the counter and the front door, Plaintiff's feet slipped out from underneath her, and she fell to the ground. (*Id.* at 4, 6, 16.) Due to the speed at which she fell, she did not have time to drop the items she was carrying, catch herself, or brace herself for the fall. (*Id.* at 6.) Consequently, Plaintiff fell on her right side, hitting her right elbow and anklebone on the ground. (*Id.* at 16.)

Following the fall, Plaintiff was approached by two store employees, who were later identified as Pedro Hernandez and Alejandro Acevedo ("**Alex**") (collectively, "**Employees**"). (*See* Doc. 44-1, pp. 8–9, Doc. 44-3, p. 4.) Surprised, shocked, and embarrassed, Plaintiff quickly got to her feet, told the Employees that she was "okay," and declined further assistance. (Doc. 44-1, pp. 9–10.). But in truth, Plaintiff was already experiencing pain in her hips. (*Id.* at 10.) The next day, due to worsening pain in her hip and ankle, Plaintiff visited Central Florida Injury Southwest after corresponding with a paralegal. (*Id.* at 10–11.)

---

[1] The following facts are taken from the evidence submitted to the Court and viewed in the light most favorable to Plaintiff, the nonmoving party. *See Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1008–09 (11th Cir. 2016).

At the time of the accident, the store floor was open without obstructions, and Plaintiff does not recall seeing any merchandise to her right, to her left, or in front of her. (Doc. 44-1, pp. 4–5.) She did not know why she fell, she did not feel anything wet or sticky on the floor, and she did not see anything on her shoes or clothing. (*Id.* at 14, 17.)

Nonetheless, Plaintiff later reported that she had slipped on a substance known as "Tire Wet" or "Tire Shine" based on information told to her by her husband, William Joseph Hamilton ("**Hamilton**"), who had spoken with Alex on the phone the day of the accident. (Doc. 44-1, p. 15, 18; *see also* Doc. 44-2, p. 5.) During this conversation, Alex told Hamilton that: (1) he had spilt Tire Wet on the floor; (2) "they tried to buff it out"; (3) "they watched a few people slip, but not fall"; and (4) Plaintiff had fallen in the location that the Tire Wet had been spilled (collectively, "**Employee Statements**")). (Doc. 44-2, p. 4.)

In light of the foregoing, Plaintiff filed the instant negligence action in state court on December 7, 2015. (Doc. 2.) Defendant later removed the action to this Court, asserting the existence of diversity jurisdiction. (Doc. 1.) In the operative Complaint, Plaintiff alleges that Defendant: (1) carelessly and negligently maintained the premises in an unsafe and dangerous condition; (2) failed to maintain the premises in a reasonably safe and proper condition; (3) negligently failed to warn Plaintiff of a dangerous condition on the premises of which it had greater knowledge; and (4) caused Plaintiff to slip and fall, resulting in substantial and permanent physical injury to her back, neck, and right ankle. (Doc. 15, ¶¶ 13, 14, 20.)

Defendant now moves for summary judgment. (Docs. 43, 44.) Specifically,

Defendant argues that there is a lack of evidence demonstrating breach and causation. (Docs. 25, 44.) Defendant also moves for the exclusion of: (1) opinion testimony concerning causation by Plaintiff's treating physicians; (2) the Employee Statements; and (3) evidence of Plaintiff's future medical expenses. (Docs. 43, 65.)[2] These motions have been fully briefed. Additionally, on March 13, 2017, Magistrate Judge Spaulding issued a Report recommending that the Court deny Defendant's motion to exclude physician testimony as to causation. (Doc. 58 ("**R&R**").) Defendant objected. (Doc. 60.)

Given the breadth of disagreement raised in these motions, the Court will begin by discussing the evidentiary disputes with respect to breach and then turn to the issues regarding causation. The Court will then address Defendant's request to exclude evidence of future damages.

## II.        DUTY AND BREACH

### A.        Legal Standards

### 1.        Motion for Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for which the non-movant would bear the burden of proof at trial, the movant may either: (1) point out an absence of evidence to support the nonmoving party's case; or (2) provide "affirmative evidence demonstrating that the nonmoving party will be

---

[2] Though directed to do so on or before April 13, 2016 (Doc. 62, p. 2), Plaintiff did not respond to the motion *in limine* filed at Doc. 65.

unable to prove its case at trial." *U.S. v. Four Parcels of Real Prop. in Green & Tuscaloosa Cntys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp.*, 477 U.S. at 325).

"The burden then shifts to the non-moving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir. 1993)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle*, 468 F.3d at 759. However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

### 2.    Premises Liability[3]

Premises liability refers to "[a] landowner's or landholder's tort liability for conditions or activities on the premises." *Premises Liability*, BLACK'S LAW DICTIONARY (9th ed. 2009). To sustain a premises liability action predicated on negligence, the

---

[3] "Federal courts sitting in diversity apply the substantive law of the state in which the case arose." *Pendergast v. Sprint v. Nextel Corp.*, 592 F.3d 1119, 1132 (11th Cir. 2010). As such, the Court will review Plaintiff's negligence claim in accordance with Florida law.

plaintiff must establish:

> (1)    [the] [e]xistence of a duty on the part of the defendant to protect the plaintiff from the injury or damage of which he complains;
>
> (2)    [the] [f]ailure of the defendant to perform that duty; and
>
> (3)    injury or damage to plaintiff proximately caused by such failure.

*See Lake Parker Mall, Inc. v. Carson*, 327 So. 2d 121, 123 (Fla. 2d DCA 1976).

Under Florida law, landowners owe different duties of care based on the status of the person on their premises. *See Seeberg v. Steak N' Shake Operations, Inc.*, 154 F. Supp. 3d 1294, 1299 (M.D. Fla. 2015). The highest duties are owed to invitees, *id.* at 1299–1300, which include public invitees and business visitors, *see Post v. Lunney*, 261 So. 2d 146, 148 (Fla. 1972).

"A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 332). Landowners owe the following duties to invitees: (1) first "to use ordinary care in keeping the premises in a reasonably safe condition"; and (2) second, "to give timely warning of latent or concealed perils which are known or should be known by the owner or occupier." *Krol v. City of Orlando*, 778 So. 2d 490, 492 (Fla. 5th DCA 2001).

But "[t]he mere fact that a person falls in a store does not automatically mean that the store is liable." *Valles v. Target Corp.*, No. 14-60723-Civ-Scola, 2015 WL 1640326, at *1 (S.D. Fla. Apr. 9, 2015) (citing *Bucholtz v. City of Jacksonville*, 72 So. 2d 52, 53

(Fla. 1954)). Rather, the plaintiff must show that the store was negligent by proving that "the store was aware, or should have been aware, of the dangerous condition that caused her injuries." *Id.* To this end, the plaintiff must demonstrate actual or constructive notice. *Brooks v. Phillip Watts Enters., Inc.*, 560 So. 2d 339, 341 (Fla. 1st DCA 1990). The latter may be established by circumstantial evidence showing that: (1) "the dangerous condition existed for such a length of time that in the exercise of ordinary care, the defendant should have known of the condition"; or (2) "the condition occurred with regularity and was therefore foreseeable." *Id.*

### B. Analysis

It is undisputed that Plaintiff was an invitee at the time of the accident, as she entered the store to purchase items from Defendant's business. Thus, Defendant owed Plaintiff a duty to maintain its premises in a reasonably safe condition and a duty to timely warn her of hidden dangers of which it had, or should have had, notice. *Krol*, 778 So. 2d at 492.

Defendant argues that it is entitled to summary judgment because Plaintiff cannot show that it breached its duty of care. (Doc. 44, p. 1.) Relying on Plaintiff's deposition testimony, Defendant points out that: (1) she did not know why she had fallen; (2) she did not see or feel any foreign substance on the floor; and (3) there was nothing on her shoes or clothing after the fall. (*Id.* at 2 (citing Doc. 44-1).) Hence Defendant contends that Plaintiff has failed to present a prima facie case of negligence. (*Id.*) The Court disagrees. Critical to this conclusion is the Court's determination that the

Employee Statements are admissible, as they are excluded from the definition of hearsay.

Hearsay is defined as a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted therein. Fed. R. Evid. 801(c). It is not admissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the U.S. Supreme Court provide otherwise. Fed. R. Evid. 802 ("**Hearsay Rule**"). Preliminary questions about the admissibility of such evidence are decided by the Court. Fed R. Evid. 104(a).

The Employee Statements unquestionably fall within the hearsay definition. First, neither party has provided the Court with testimony from the declarant, Alex, concerning such statements. Second, Plaintiff intends to offer such evidence to prove the truth of its contents—namely, that Defendant's employees were aware that the floor was slippery because they had spilled Tire Wet earlier that day and watched multiple customers slip in that area. Thus, the Employee Statements are presumptively inadmissible under the Hearsay Rule. But because they are excluded from the definition of hearsay as a vicarious admission, they are admissible.[4]

---

[4] The Court, however, rejects Plaintiff's attempt to characterize the Employee Statements as a statement against interest under FRE 804(b)(3)'s hearsay exception. In pertinent part, a statement against interest is one that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's propriety or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability." Fed. R. Evid. 804(b)(3)(A). Admittedly, it would be difficult to imagine a statement more qualifying as a statement against

A vicarious admission is a statement offered against an opposing party that was made by the party's agent or employee on a matter within the scope of that relationship while it existed. Fed. R. Evid. 801(d)(2)(D). The Court must consider the statement in determining whether it falls within this exclusion, but it does not by itself establish the scope of the employment relationship. Fed. R. Evid. 801(d)(2). In other words, as made clear in *United States v. Portsmouth Paving Corporation*, 694 F.2d 312, 322 (4th Cir. 1982)— a case cited by both parties—though "specific authorization to speak need not be shown," to trigger the exclusion, it is incumbent upon the party offering the hearsay statement to establish by independent evidence, either circumstantial or direct, that the scope of the declarant's agency included the subject matter of the statement. *Id.* at 321 & n.12.

---

interest than the one attributed to Alex by Hamilton—except for one glaring omission: before the Court may assess whether the Employee Statements fall within this category, Plaintiff must first prove that the declarant is unavailable, *United States v. Acosta*, 769 F.2d 721, 722, 733 (11th Cir. 1985) (citing *United States v. King*, 713 F.2d 627 (11th Cir. 1983)). Hearsay is rejected as admissible testimony because it is inherently unreliable, not being subject to the crucible of cross examination. Exceptions to the Hearsay Rule recognize that this inherent unreliability can be overcome in certain circumstances. Specifically, the 804(b)(3)(A) exception acknowledges that when an agent speaking within the scope of his agency makes a statement against the interest of his principal, the truth of the statement becomes more reliable. If the declarant is not available to be confronted with the statement, it can be admitted as an exception to the Hearsay Rule. Not only has Plaintiff failed to offer any evidence establishing that Alex is unavailable, but Defendant has submitted evidence demonstrating that it made Alex available for deposition prior to the close of discovery (*see* Doc. 50-1, p. 2). The Committee notes to the 1974 enactment of FRE 804 make clear that there must be an attempt made to depose a witness (as well as to seek his attendance) as a precondition to the witness being deemed unavailable. Having failed to establish this essential element, Plaintiff has not met her burden of bringing the Employee Statements within this exception.

Though slim,[5] there is sufficient independent evidence in the record to establish the scope of Alex's employment relationship with Defendant. Importantly, Defendant identified Alex as a salesperson in an interrogatory answer. (Doc. 44-3, p. 4.) Given Plaintiff's testimony that she fell between the sales counter and the store exit, Defendant's identification of Alex as a salesperson is enough to demonstrate that the Employee Statements fell within the scope of his employment, as it is clear that a salesperson's job performance would include the observation of occurrences that take place on the sales floor.[6] Hence the Employee Statements are admissible as vicarious admissions.

Plaintiff's theory of the case is that Tire Wet was spilled on the floor, improperly cleaned, and Defendant had knowledge of the resultant dangerous condition yet failed to warn its customers. (*See* Doc. 15, ¶¶ 6–11.) This is supported by the Employee Statements in which Alex admitted that he spilled the substance on the floor, Defendant's employees "*tried* to buff it out," and thereafter observed multiple people slip in that area. These statements create a genuine issue of material fact as to actual and constructive notice on the part of Defendant, which is all that is required to raise a

---

[5] It is somewhat inexplicable that Plaintiff would fail to depose Alex when her entire case hangs in the balance of the Court finding the Employee Statements admissible under the applicable hearsay exclusion. This slender reed of independent evidence to demonstrate the scope of Alex's employment and thus avoid summary judgment seems a precarious approach, at best.

[6] *Cf. Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560 (11th Cir. 1991) (concluding that a cabin steward's statements regarding prior notice of a dangerous condition on a cruise ship were inadmissible based, in part, on the plaintiff's failure to rebut an affidavit submitted by the defendant stating that room stewards were restricted to crew areas of the ship and not permitted to be in the passenger area near where the condition causing injury to the plaintiff was located).

triable issue with respect to breach. Thus, Defendant's motion for summary judgment as to breach is due to be denied.

### III.     CAUSATION

Turning now to the issue of causation, Defendant's motions argue that: (1) Plaintiff inadequately disclosed the testimony of her treating physicians during discovery; (2) such testimony should be excluded under Federal Rule of Civil Procedure 37; and (3) in the absence of medical causation testimony, the Court must grant summary judgment in favor of Defendant. (*See* Docs. 25, 43.) To place these motions in context, the Court will first provide the procedural history and the relevant authority.

#### A.     Procedural History

On March 30, 2016, the Court issued a Case Management and Scheduling Order ("**CMSO**") (Doc. 20), which set: (1) an **April 8, 2016** deadline for the parties' mandatory initial disclosures; (2) an **August 26, 2016** deadline for Plaintiff's expert witness disclosures and reports; (3) a **September 23, 2016** deadline for Defendant's expert witness disclosures and reports; (4) an **October 21, 2016** deadline for the completion of discovery; and (5) a **November 23, 2016** deadline for the submission of dispositive and *Daubert*[7] motions (*id.* at 3).

Pursuant to the applicable deadline, Plaintiff served her initial disclosures on Defendant on **April 8, 2016**. (Doc. 36, pp. 5–8 ("**Initial Disclosures**").) The Initial Disclosures included a section entitled "Medical Providers," which listed the names,

---

[7] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

addresses, and phone numbers of twelve medical *practices* where Plaintiff was treated—save for a "Gerald B. Bornstein, DPM," the sole physician identified by name. (*See id.* at 6–7.) In addition, Plaintiff attached a medical chronology to her Initial Disclosures, summarizing the treatment she received at these locations ("**Medical Chronology**") (*see* Doc. 36, pp. 9–24) and provided Defendant with a CD containing her medical records (*id.* at 7).

The following month, Magistrate Judge Spaulding held a telephonic preliminary pretrial conference ("**PPTC**") on May 16, 2016. (Docs. 22, 23.) At the PPTC, the magistrate cautioned counsel that "discovery disputes should be resolved within the discovery period rather than being presented initially to the presiding District Judge after the discovery period close[s]." (Doc. 58, p. 2.)

Despite this warning, four days after Plaintiff's **August 26, 2016** deadline to disclose her expert witnesses and reports, Defendant moved for summary judgment on the ground that Plaintiff could not prove medical causation without offering a medical expert to support her claims. (Doc. 25 ("**Causation MSJ**").) In her response, filed **October 11, 2016**, Plaintiff maintained that her Initial Disclosures and Medical Chronology "listed all of her treating physicians as well as summaries of her treatment." (Doc. 36, p. 3.) Closer examination of Plaintiff's response reveals that Plaintiff appeared to be under the mistaken impression that the Causation MSJ sought to exclude the testimony of Plaintiff's treating physicians pursuant to a *Daubert* challenge.

In any event, Defendant did not file a reply in support of its Causation MSJ. Rather, in the weeks that followed, Defendant: (1) filed a second motion for summary judgment after obtaining leave of Court, this time on the issue of breach (Docs. 38, 39, 44); and (2) moved to exclude any causation opinions rendered by Plaintiff's treating physicians due to the lack of an expert disclosure (Doc. 43 ("**Motion to Exclude**")). In response to the Motion to Exclude, Plaintiff argued that: (1) she was not required to file an expert report under Rule 26(a)(2)(B) because her treating physicians acquired their testimony during treatment; (2) her Initial Disclosures, which listed her medical providers and contained her Medical Chronology, satisfied her obligations under Rule 26(a)(2)(C); and (3) any prejudice suffered by Defendant was caused by their failure to depose Plaintiff's treating physicians. (Doc. 47.)

In light of these outstanding discovery disputes, Magistrate Judge Spaulding held a discovery compliance hearing on February 17, 2017 ("**Discovery Hearing**"). (Docs. 51, 53, 54.) Prior to the hearing, the parties were directed to submit a joint notice of discovery topics on which they disagreed. (Doc. 51.) The subsequently submitted notice indicated that Plaintiff sought to take the depositions of additional fact witnesses—including David Martinez ("**Mr. Martinez**"), store manager of the Orlando Advance Auto Parts store where Plaintiff had fallen, and Alex, the employee who allegedly admitted to spilling "Tire Wet" on the store floor the day of Plaintiff's accident. (Doc. 52.) Also at issue was Plaintiff's failure to timely supplement her discovery responses and disclosures concerning subsequent medical care and other accidents. (*See id.*)

At the Discovery Hearing, Plaintiff revealed the names of the treating physicians from whom she intended to elicit causation testimony: (1) David Peterson, M.D., of Whitesands Orthopedic; (2) Scott S. Katzman, M.D., of Advance Orthopedics and Pain Management, PL; and (3) Jerold Fadem, M.D., of Central Florida Injury East, Inc. (collectively, "**Treating Physicians**") (Doc. 58, p. 2.) The Undersigned later referred the Motion to Exclude to Magistrate Judge Spaulding, who issued the pertinent R&R on March 13, 2017. (Doc. 58.)

In doing so, Magistrate Judge Spaulding found that: (1) Plaintiff did not serve clearly identified expert witness disclosures on Defendant under Rule 26(a)(2)(B) or (a)(2)(C); (2) there was no indication that the Treating Physicians relied on information obtained outside the course of treatment and, therefore, Plaintiff was not required to provide expert witness reports under Rule 26(a)(2)(B); (3) the statements of the Treating Physicians included in the disclosed Medical Chronology and medical records were sufficient to comply with Rule 26(a)(2)(C); and (4) Plaintiff's failure to serve a specific Rule 26(a)(2)(C) disclosure was harmless under the factors enumerated in *Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 1:11-cv-1094-JEC, 2013 WL 1189493, at *7 (N.D. Ga. Mar. 21, 2013). (*Id.* at 3–7.)

Importantly, the *Kondragunta* court used a five-factor test to determine whether an insufficient disclosure was harmless, weighing: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose

the evidence. 2013 WL 1189493, at *7. Applying this test, Magistrate Judge Spaulding found that: (1) Defendant could not justifiably claim surprise because the Treating Physicians' testimony had been included in the Medical Chronology and records that were disclosed; (2) allowing the testimony of the Treating Physicians would not disrupt the trial; (3) such testimony was essential to Plaintiff's case as, without it, her claim would be unable to survive summary judgment; and (4) Plaintiff did not provide an adequate explanation for failing to serve specifically identified Rule 26(a)(2)(C) disclosures. (*Id.*) With respect to the second factor—which appears to have been weighed most heavily—the R&R faults Defendant for waiting until the close of discovery to file the Motion to Exclude. (*Id.* at 2.) In particular, the R&R concludes that that Defendant could have advised Plaintiff that her disclosures did not comply with the Federal Rules, requested more specific disclosures, and requested Court intervention if these attempts failed. (*Id.* at 7–8.) According to the magistrate, by forgoing these options, Defendant took a gamble. (*Id.* at 8.)

Based on these findings, the R&R recommends that the Court deny the Motion to Exclude but: (1) permit Defendant to seek leave to depose the Treating Physicians; and (2) similarly afford Plaintiff the opportunity to renew her request to depose Alex and Mr. Martinez upon a showing of good cause. (*Id.* at 9.) Defendant vehemently objects. (Doc. 60.)

The gravamen of Defendant's objections is that Plaintiff's Treating Physicians may not testify as expert witnesses because they did not produce an expert report as required by Rule 26(a)(2)(B). (*Id.* at 2–3.) Alternatively, to the extent that Plaintiff was

only required to produce expert disclosures under Rule 26(a)(2)(C), Defendant argues that Plaintiff failed to identify any specific witness or provide a summary of the facts and opinions underlying their expected testimony. (*Id.* at 5.) Defendant also argues that "it was prejudiced by Plaintiff's actions because it was unable to obtain meaningful expert discovery from Plaintiff's [Treating Physicians] and [it] was unable to retain its own rebuttal expert." (*Id.* at 6.)

**B.    Standard of Review**

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues based on the record independent of the magistrate judge's report. *Ernest S. ex rel. Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

**C.    Analysis**

Regrettably, this dispute demonstrates the tension encountered when sloppy lawyering and cavalier treatment of the discovery rules crosses paths with the opposing counsel's implementation of "a dangerous game of gotcha"[8] and tactics that shirk their obligations under the CMSO and the Local Rules. While neither conduct is

---

[8] (Doc. 63, p. 2) (quoting Magistrate Judge Spaulding's opening remarks at the Discovery Hearing).

commendable,[9] the Court must strike the balance in order to do justice to the parties, who are the ones ultimately prejudiced by their lawyers' failings.

As an initial matter, such conduct is prohibited by the CMSO, which, in accordance with its purpose of securing "the just, efficient, and inexpensive resolution of this action," informs the parties that "[a]ll conduct related to this action must civil, cooperative, [and] conscientious." (Doc. 20, p. 1.) Additionally, it: (1) requires that the parties strictly comply with the procedures and requirements set forth in the CMSO, the Federal Rules of Civil Procedure, and the Local Rules; and (2) explicitly incorporates the requirements of Rule 26 and Local Rule 3.01(g). (*Id.* at 4, 5, 19.)

Under Rule 26(a)(2)(A), a party must disclose the identity of any witness it may use at trial to present expert testimony. In turn, Rules 26(a)(2)(B) and (C) delineate additional information that must be provided, depending on whether the expert is required to provide a written report. Meanwhile, Local Rule 3.01(g) provides that, before filing most motions, the moving party "shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion" and file a statement: (1) certifying that the moving counsel has conferred with opposing counsel; and (2) advising the Court whether counsel agree on the resolution of the motion. As elaborated by the CMSO, to comply, the moving party is obligated to "engage in a

---

9 *See, e.g.*, *Griffith v. Gen. Motors Corp.*, 303 F.3d 1276, 1283 (11th Cir. 2003) ("We do not commend either party on its efforts to resolve this dispute. [The defendant] would do well to make sure that, in the future, its Rule 26 disclosures comport with both the spirit and the letter of the rule. Nonetheless, [the plaintiff] allowed this impasse to continue beyond the point of good faith efforts to resolve the issue without court intervention, never moving for an order requiring any more detailed response under Rule 26.").

*substantive* conversation with the opposing party—**in person or by telephone**—in a good faith effort to resolve the issues raised by the motion without Court intervention"; such duty is not satisfied by mere correspondence. (Doc. 20, p. 5.)

The foregoing juxtaposition becomes all the more significant when one considers that the discovery rules also "contemplate that discovery will proceed without judicial intervention unless a party moves for a protective order under Rule 26(c) or an order compelling discovery under Rule 37(a)." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 n. 24 (1978). Here, the Causation MSJ was filed on **August 30, 2016**—almost two months prior to the close of discovery. Though both parties had time to take corrective action, Plaintiff insisted that its disclosures were sufficient, while Defendant insisted that such disclosures should mark the end of Plaintiff's case. Had the parties meaningfully conferred as contemplated by the Local Rules, the CMSO, the discovery rules, and Magistrate Judge Spaulding's apt warning at the PPTC, the matter could have been resolved with minimal Court intervention and disruption to the Court's trial schedule.[10] But, presumably in the spirit of "zealous representation," neither party conceded its position. Which brings us to where we are today.

For its part, Defendant is correct that, without expert testimony on medical causation, Plaintiff cannot prove its negligence case. "In the negligence context under Florida law, lay testimony is legally insufficient to support a finding of causation where the medical condition involved is not readily observable." *Rementer v. United States*,

---

[10] Notably, the Motion to Exclude was initially filed without the requisite 3.01(g) certification, as was the pending motion *in limine* (Doc. 65).

No. 8:14-cv-642-T-17MAP, 2015 WL 5934522, at *3 (M.D. Fla. Oct. 9, 2015) (quoting *Jones v. Royal Carribean Cruises, Ltd.*, No. 12-20322-CIV, 2013 WL 8695361, at *6 (S.D. Fla. Apr. 4, 2013)). Moreover, "Florida courts have held that a plaintiff's back pain and other soft tissue injuries are not readily observable medical conditions." *Id.* (citing *Crest Prods. v. Louise*, 593 So. 2d 1075, 1077 (Fla. 1st DCA 1992)). Therefore, the nature of Plaintiff's claimed injuries necessitates the use of expert testimony on medical causation.

Nonetheless, Plaintiff's Treating Physicians were not required to produce any expert reports. As Defendant acknowledges, "if a physician's opinion regarding causation or any other matter was formed and based on observations made during the course of treatment, then no [Rule 26(a)(2)(B)] report is required." *Kondragunta*, 2013 WL 1189493, at 12. Indeed, "[o]pinions regarding causation, the need for continued treatment, and the reasonable cost thereof may be formed during the course of treatment and do not automatically convert a treating doctor into one retained or specially employed to provide expert testimony within the meaning of Rule 26(a)(2)(B)." *Guffey v. Dillard's, Inc.*, No. 3:14-cv-1469-J-32JBT, 2015 WL 12844949, at *3 (M.D. Fla. Dec. 29, 2015). Contrary to Defendant's arguments, a review of Plaintiff's Initial Disclosures, Medical Chronology, and relevant medical records supports Magistrate Judge Spaulding's conclusion that the Treating Physicians did not rely on matters outside their treatment;[11] thus no Rule 26(a)(2)(B) report was required.

---

[11] Such a conclusion is warranted on these facts. In all likelihood, Plaintiff went to her medical providers complaining of pain. She visited one provider the day after her

Where an expert witnesses is not obligated to provide a written report, the disclosure under Rule 26(a)(2)(C) must state: (1) the subject matter on which the witness is expected to present evidence under FRE 702, 703, or 705; and (2) a summary of the facts and opinions to which the witness is expected to testify. While Plaintiff did not explicitly identify this information as a Rule 26(a)(2)(C) disclosure, the Court agrees with Magistrate Judge Spaulding's conclusion that the Initial Disclosures, Medical Chronology, and medical records for White Sands Orthopedic, Advance Orthopedics and Pain Management, PL, and Central Florida Injury East, Inc. contain the information required by Rule 26(a)(2)(C). [12] As to whether this constitutes good practice, the answer is no. Nonetheless, Plaintiff is now bound by what she disclosed, as conceded by her counsel at the Discovery Hearing.

---

accident. The natural dialogue with her physicians would have included how she fell and how she landed in order to determine both the location and impact of the fall on Plaintiff's body. *See Rementer*, 2015 WL 5934522, at *5 ("Because a treating physician considers not only the plaintiff's diagnosis and prognosis, opinions as to the cause of injuries do not require a written report if based on the examination and treatment of the patient. Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis, and the extent of disability, if any, caused by the condition.").

[12] Nor have Defendant's objections otherwise shown that that the proffered testimony is substantively inadmissible. Rather, Defendant's remaining arguments as to the sufficiency of the contested causation opinions contain no citation to legal authority. (*See* Doc. 60, pp. 11, 12, 14.) Further, though Defendants point to the absence of any differential diagnosis, treating physicians are not required to perform a differential diagnosis to rule out other possible causes—this is merely one approved methodology. *See Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1342 (11th Cir. 2010). There is also authority for the proposition that a treating physician who acquires his opinions during the course of treatment is not subject to the *Daubert* analysis. *See Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 712 (11th Cir. 2008) (suggesting that it is not until a treating physician expresses an opinion *unrelated* to treatment and based on scientific, technical, or other specialized knowledge, that a witness offers expert testimony for which the Court must perform its essential gatekeeping function as required by *Daubert*).

This finding notwithstanding, Plaintiff's disclosures were *not* sufficient under Rule 26(a)(2)(A) because they did not identify the names of the expert witnesses that she intended to use at trial. Instead, she merely identified the Treating Physicians' medical practices. Arguably then, Defendant could not have sought to depose persons that Plaintiff did not disclose, although they most certainly could have asked for the names.

In light of Plaintiff's omission, Defendant's arguments with respect to prejudice give the Court some pause. Specifically, Defendant maintains that, due to this omission, it did not depose Plaintiff's experts, did not retain its own expert on medical causation (in tandem with a Rule 35 medical examination) and missed the applicable *Daubert* motion deadline. (Doc. 60, p. 18.) This representation from an experienced defense lawyer is less suggestive of prejudice by the omission and more likely the calculated risk of lying in wait. Defendant certainly was on notice that Plaintiff was claiming injury from the fall and had ample time to seek a Rule 35 examination, yet chose not to.

"Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Paul v. Aramark Healthcare Support Servs.*, No. 1:15-cv-189-MHC, 2016 WL 7888045, at *4 (N.D. Ga. June 2, 2016) (quoting *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015)). But "[w]hen, as here, a party fails to promptly seek enforcement of his rights, any prejudice suffered arises largely from the party's own inaction." *Ellison v. Windt*, No. 6:99-cv-1268-OrlKRS, 2001 WL 118617, at *3 (M.D. Fla. Jan. 24, 2001). So the Court must balance the prejudice created by improper disclosures and untimely notifications.

On one hand, any prejudice suffered by Defendant is at least, in part, a consequence of pursuing exclusion of Plaintiff's testimony to the exclusion of all other alternatives. Notably, Defendant had notice of Plaintiff's intent to rely on her Initial Disclosures and Medical Chronology as of October 11, 2016, when she responded to its Causation MSJ. This was prior to the close of discovery, and Defendant could have moved to extend discovery after conferring with Plaintiff. It chose not to do so. As Magistrate Judge Spaulding concluded, Defendant chose to invoke a "gotcha" tactic to procure the exclusion of any such proposed testimony. Because the R&R did not deliver on Defendant's bet, it now claims prejudice. But the truth is that it took a gamble, and risk of loss was a known consequence. Indeed, Rule 37(c)(1) sanctions are discretionary. *Bearint ex rel. Bearint v. Dorel Juvenile Grp., Inc.*, 389 F.3d 1339, 1348 (11th Cir. 2004).

Moreover, the Court may choose to employ a number of alternative sanctions to cure any perceived prejudice. Under Rule 37(c)(1),

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. In addition to or *instead of* this sanction, the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions.

(emphasis added). Perhaps cognizant of the Court's discretion, Defendant requests that the Court alter the scheduling of this action to allow it to conduct additional discovery on the issue of medical causation should the Court deny the Motion to Exclude.

Upon consideration of the totality of the circumstances and pursuant to its discretion under Rule 37(c)(1), the Court declines to exclude the Treating Physicians' causation testimony. But any testimony elicited from the Treating Physicians is limited to testimony contained in, or necessarily related to, the summary contained in the Medical Chronology and disclosed medical records. Accordingly, the Treating Physicians may not be presented with hypotheticals at trial. The Court also finds that modification of the CMSO deadlines is warranted. As such, the Court will: (1) grant Defendant leave to depose the Treating Physicians if it so chooses; and (2) continue the upcoming final pretrial conference and trial term by sixty days.[13]

With the denial of the Motion to Exclude, so too falls the Causation MSJ. At the time briefing closed, the record contained the Initial Disclosures and attached Medical Chronology (*see* Doc. 36), which includes the Treating Physicians' opinions on causation. As the Court declines to exclude their testimony, Plaintiff has created a material question of fact on the issue of causation, thus precluding summary judgment.

## IV.    DAMAGES

In accordance with the preceding rulings, Defendant's motion *in limine* is denied as to the Employee Statements and the causation testimony of the Treating Physicians.

---

[13] The Court declines to entertain a further request by Plaintiff to depose Mr. Martinez and Alex out of time. Plaintiff waited nearly four months after the close of discovery to present this request and has failed to show good cause for the delay. Though, as represented at the Discovery Hearing, Plaintiff's counsel was in trial on the available date provided by Defendant, counsel has provided no reason why his law partner could not take the deposition, as communicated to Defendant. That two experienced lawyers could not find a way to accommodate one another to take these depositions in a case this simple is a further example of how not to conduct litigation.

However, Defendant's motion with respect to Plaintiff's future medical expenses is granted as unopposed, as Plaintiff failed to respond by the April 13, 2016 deadline.

In particular, Defendant argues that Plaintiff failed to provide a specific computation of the amount of damages sought for future medical expenses in her Initial Disclosures and also failed to supplement these disclosures. (Doc. 65, pp. 10–12.) As set forth in the CMSO, the Court routinely grants motions as unopposed when no response is filed. (Doc. 20, p. 10.) That being the case here, evidence of Plaintiff's future medical expenses will be excluded.

### IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    Defendant, Discount Auto Parts, LLC's Motion for Summary Judgment (Doc. 44) is **DENIED**.

2.    Defendant, Discount Auto Parts, LLC's Objections to Magistrate Judge Spaulding's Report and Recommendation on Defendant's Renewed Motion to Exclude Treating Physicians' Opinion Testimony on Causation (Doc. 60) are **SUSTAINED IN PART AND OVERRULED IN PART** as set forth herein.

3.    U.S. Magistrate Judge Karla R. Spaulding's Report and Recommendation (Doc. 58) is **ADOPTED IN PART**.

4.    Defendant, Discount Auto Parts, LLC's Renewed Motion to Exclude Treating Physicians' Opinion Testimony on Causation Pursuant to Rule 37(c)(1) (Doc. 43) is **DENIED**.

5. Defendant, Discount Auto Parts, LLC's Motion for Summary Judgment on Medical Causation and Incorporated Memorandum of Law (Doc. 25) is **DENIED**.

6. On or before Friday, **April 21, 2017**, Plaintiff is **DIRECTED** to provide Defendant with clearly labeled Rule 26(a)(2)(C) disclosures that identify each of the Treating Physicians by name and contain the subject matter of their expected testimony and a summary of the facts and opinions thereof within the bounds of her prior disclosures.

7. Defendant is **GRANTED LEAVE** to depose the Treating Physicians, provided such discovery is completed by Friday, **May 26, 2017**.

8. Defendant Discount Auto Parts, LLC's Omnibus Motion *in Limine* (Doc. 65) is **GRANTED IN PART AND DENIED IN PART**.

   a. To the extent that Defendant seeks to exclude evidence of Plaintiff's future medical expenses at trial, the Motion is **GRANTED** as unopposed.

   b. In all other respects, the Motion is **DENIED** consistent with the aforementioned rulings.

9. As this case is not yet ready for trial, the final pretrial conference scheduled for Thursday, **April 20, 2017**, is **CANCELLED** and **CONTINUED** to Thursday, **June 15, 2016**, at 10:00 a.m. The parties shall file an amended Joint Pretrial Statement by Monday, **June 5, 2017**.

10. Trial is **CONTINUED** to the term commencing **July 3, 2017**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on April 19, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record